UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CLARK SCRIBNER,<br><br>         Plaintiff,<br><br>    v.<br><br>TRANS UNION LLC, et al.,<br><br>         Defendants. | No.  2:23-cv-02722-JAM-CKD<br><br>**ORDER GRANTING DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION** |

Plaintiff Robert Scribner ("Plaintiff") initiated this action on November 21, 2023, against several defendants. Compl., ECF No. 1. Defendant Experian Information Solutions, Inc. ("Defendant" or "EIS") now moves to compel arbitration. Def.'s Mot. to Compel Arb., ECF No. 32. For the reasons set forth below, the Court GRANTS Defendant's motion and stays this action as to EIS pursuant to 9 U.S.C. § 3.[1] Defendant's pending motion to stay, ECF No. 36, is thus moot.

///

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g).

1

I.   ALLEGATIONS AND BACKGROUND

Plaintiff asserts multiple claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, and the California Credit Reporting Agencies Act, Cal. Civ. Code § 1785.14, *et seq.*, against defendants Equifax Information Services LLC, EIS, and Trans Union LLC.  Compl., ECF No. 1.  Plaintiff alleges he ordered credit reports from each defendant in or around June of 2023 in anticipation of obtaining an automobile loan.  Id. ¶¶ 62-64.  To receive a credit report from Experian, Plaintiff created an online account with Experian's credit monitoring service, CreditWorks.  Plf.'s Decl., Ex. B to Opp'n, ECF No. 42-2 at ¶¶ 2-6; Smith Decl., ECF No. 32-2 at ¶ 1.  Upon reviewing the credit reports, Plaintiff noticed they were inaccurate because they contained another consumer's information and credit history.  Compl. ¶¶ 67-73.  Plaintiff alleges he reported these inaccuracies to defendants, but they failed to take appropriate action.  Id. ¶¶ 75-80, 87.  As a result, Plaintiff sustained damages.  E.g., id. ¶ 115.

EIS filed this motion to compel arbitration on the ground that Plaintiff, by creating a CreditWorks account, agreed to Defendant's "Terms of Use Agreement," which mandates arbitration.  Memo. of P. & A. ("Mot."), ECF No. 32-1; Terms of Use Agreement, Ex. 3 to Smith Decl., ECF No. 32-2.  Plaintiff filed an Opp'n, ECF No. 42, and Defendant replied.  Reply, ECF No. 43.  The parties then provided supplemental authority, which the Court has considered.  ECF Nos. 47-51.  Defendant also filed a motion to stay this action until the Court ruled on the pending motion to

compel.[2]  Mot. to Stay, ECF No. 36.

## II.  OPINION

### A.  Legal Standard

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  A district court's role under the Federal Arbitration Act ("FAA") is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

"In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation."  Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 855 (9th Cir. 2022) (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).  If the district court is "satisfied of the existence of a valid arbitration agreement, the court must order the parties to proceed to arbitration in accordance with the terms of the agreement."  Oberstein v. Live Nation Ent., Inc., 60 F.4th 505, 510 (9th Cir. 2023) (citing 9 U.S.C. § 4).  In contrast, if the district court is not satisfied, then it "shall proceed summarily to the trial thereof."  9 U.S.C. § 4.  Defendant, as the party seeking to

---

[2] Defendant previously filed a motion to compel arbitration and motion to stay, ECF Nos. 23 (compel), 25 (stay), but it withdrew those motions before refiling the pending motions.  Withdrawals, ECF Nos. 29 (compel), 30 (stay).

1  compel arbitration, "bears the burden of proving the existence of
2  a valid arbitration agreement by the preponderance of the
3  evidence." Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.,
4  622 F.3d 996, 1005 (9th Cir. 2010).

### B. Analysis

Plaintiff argues Defendant has not meet its burden of showing the existence of a valid arbitration agreement because (1) Defendant's evidence is inadmissible and (2) mutual assent was lacking, thus precluding a contractual agreement to arbitrate. Opp'n at 2.

#### 1. Mr. Smith's Declaration is Admissible

In support of its motion to compel arbitration, Defendant submits a declaration from Dan Smith, the Director of Product Operations for ConsumerInfo.com ("CIC"), which does business as Experian Consumer Services ("ECS"). See generally Mot. EIS, as an affiliate of CIC and ECS, is encompassed by the arbitration agreement. Smith Decl., ECF No. 32-2 at ¶ 2; Terms of Use Agreement, Ex. 3 to Smith Decl., ECF No. 32-2 at 14. Plaintiff argues Mr. Smith's Declaration is inadmissible because he lacks personal knowledge of the matters therein. Opp'n 7-12. Without the declaration, Plaintiff contends Defendant cannot meet its burden of demonstrating the parties entered into a valid arbitration agreement. See id.

Mr. Smith has been employed by CIC for over 14 years. Smith Decl. ¶ 1. His duties require him to be familiar with "how consumers enroll, the forms they must complete to enroll . . . webpages a consumer would have encountered to complete their enrollment . . . [and] which links or button the consumer clicked

4

on," among other areas. Id. Mr. Smith's knowledge is based on information "acquired in the course and scope of [his] job responsibilities and through the review of pertinent documents maintained as business records . . . ." Id. Mr. Smith declares that when Plaintiff successfully enrolled in CreditWorks, he "had to complete two webforms." Smith Decl. ¶ 3 (emphasis added). These webforms are attached to his declaration as "Exhibit 1" and "Exhibit 2." Id. Both exhibits are produced "as [they] would have appeared when Plaintiff enrolled . . . ." Id.

Plaintiff attacks Mr. Smith's declaration on the ground that he lacks personal knowledge of what Plaintiff "accessed, saw, or clicked on January 22, 2019," because he "does not know Plaintiff, has never met him, and was not present when [Plaintiff] allegedly agreed to the terms and conditions to which Experian seeks to bind him." Opp'n at 8-9. This, however, is unnecessary in this context.

Plaintiff admits he obtained a credit report from Experian and successfully created a CreditWorks account. Compl. ¶¶ 64-65; Plf.'s Decl., ECF No. 42-2 at ¶¶ 2-6. Mr. Smith's declaration establishes that Plaintiff could not have created an account unless he completed both webforms, depicted in Exhibits 1 and 2, and clicked the "Submit Secure Order" button on Exhibit 2. Smith Decl. ¶¶ 3, 5. Contrary to Plaintiff's argument, Mr. Smith is not speculating as to what Plaintiff "accessed, saw, or clicked on January 22, 2019," but is rather asserting what was necessary to enroll in CreditWorks.

Mr. Smith's declaration establishes that he does have personal knowledge of the enrollment process as evidenced by his

5

duties and responsibilities over the past 14 years as an employee of CIC and having reviewed internal records and documents. Smith Decl. ¶ 1. Also, "[p]ersonal knowledge may be inferred from a declarant's position." In re Kaypro, 218 F.3d 1070, 1075 (9th Cir. 2000).

Contrary to Plaintiff's contentions, Mr. Smith's declaration does not summarily assert personal knowledge, and the basis for his knowledge is not solely derived from documents reviewed or information received from others. Plaintiff has also not provided legal authority from the Ninth Circuit requiring Mr. Smith to specifically identify every document on which he may have relied. Plaintiff's reliance on Austin v. Equifax Info. Servs., LLC, No. 3:22CV707, 2023 WL 8646275 (E.D. Va. Dec. 14, 2023), an unpublished decision from the Eastern District of Virginia that is currently on appeal, is unavailing.

In sum, the Court finds Mr. Smith sufficiently demonstrated he has personal knowledge of the facts asserted in his declaration. Because Plaintiff admits he successfully created a CreditWorks account, there is only one reasonable conclusion given the enrollment process in effect at the time: Plaintiff was presented with the website depicted in Exhibit 2 and clicked the button entitled "Submit Secure Order." The Court next considers whether, by doing so, Plaintiff agreed to arbitrate his claims.

2. A Valid Arbitration Agreement Exists

Plaintiff argues an arbitration agreement does not exist because there was no mutual assent as to that term. Opp'n at 13.

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United

6

1  Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582
2  (1960). "Courts look to state law to determine whether a valid
3  agreement to arbitrate exists." Davis v. Nordstrom, Inc., 755
4  F.3d 1089, 1093 (9th Cir. 2014). "[U]nder California law, mutual
5  assent is a required element of contract formation." Knutson, 771
6  F.3d at 565. "Mutual assent may be manifested by written or
7  spoken words, or by conduct, [] and acceptance of contract terms
8  may be implied through action or inaction." Id. (internal
9  citations and quotations omitted). "Courts must determine
10 whether the outward manifestations of consent would lead a
11 reasonable person to believe the offeree has assented to the
12 agreement." Knutson, 771 F.3d at 565. Because outward
13 manifestation is the focus, an offeree may be found to have
14 accepted an offer through conduct even if he is subjectively
15 unaware of all the offer's terms. Id. However, "an offeree,
16 regardless of apparent manifestation of his consent, is not bound
17 by inconspicuous contractual provisions of which he was unaware,
18 contained in a document whose contractual nature is not obvious."
19 Windsor Mills, Inc., 25 Cal.App.3d at 993. "These elemental
20 principles of contract formation apply with equal force to
21 contracts formed online." Berman v. Freedom Fin. Network, LLC,
22 30 F.4th 849, 855-56 (9th Cir. 2022).
23    Contracts formed online generally fall into three
24 categories: (1) "'clickwrap' [] agreements, in which website
25 users are required to click on an 'I agree' box after being
26 presented with a list of terms and conditions of use," Nguyen v.
27 Barnes & Noble Inc., 763 F.3d 1171, 1175-76 (9th Cir. 2014); (2)
28 "'browsewrap' agreements, where a website's terms and conditions

7

of use are generally posted on the website via a hyperlink at the bottom of the screen," id.; and (3) a hybrid variation where a hyperlink of the terms and conditions are placed near a box that a consumer must click to continue. Capps v. JPMorgan Chase Bank, N.A., No. 222CV00806DADJDP, 2023 WL 3030990 (E.D. Cal. Apr. 21, 2023) (citing Berman v. Freedom Fin. Network, LLC, No. 18-cv-01060-YGR, 2020 WL 5210912, at *2 (N.D. Cal. Sept. 1, 2020), aff'd, 30 F.4th 849 (9th Cir. 2022); Berman, 30 F.4th at 864-68.) Clickwrap and browsewrap agreements "fall on two ends of a spectrum; courts routinely find clickwrap agreements enforceable but are generally more reluctant to enforce browsewrap agreements." Capps, 2023 WL 3030990, at *3.  Here, a hyperlink to the Terms of Use Agreement appears before reaching the "Submit Secure Order" button.  Thus, this website design is "somewhat like a browsewrap agreement in that the terms are only visible via a hyperlink, but also somewhat like a clickwrap agreement in that the user must do something else—click ['Submit Secure Order']—to assent to the hyperlinked terms." DeVries v. Experian Info. Sols., Inc., No. 16-cv-02953-WHO, 2017 WL 733096, at *5 (N.D. Cal. Feb. 24, 2017) (citation omitted).

    To reconcile the various ways a contract may be formed over the internet, the Ninth Circuit has established the following analytical framework:

> Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.

Berman, 30 F.4th at 856. Here, Plaintiff denies having knowledge of the arbitration provision in the Terms of Use Agreement. Plf.'s Decl. ¶¶ 3-6. Thus, Defendant must prove (1) the website provided reasonably conspicuous notice of Defendant's Terms of Use Agreement; and (2) Plaintiff took some action that unambiguously manifested his assent to those terms. Berman, 30 F.4th at 856.

          a.   Reasonably Conspicuous Notice

Defendant must demonstrate the website provided Plaintiff reasonably conspicuous notice that, by creating an Experian account, he would be bound to arbitrate his claims. Berman, 30 F.4th at 856. "[T]o be conspicuous in this context, a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." Id. Where the font is gray and "so small that it [is] 'barely legible to the naked eye," it has been found to be the "antithesis of conspicuous." Id. at 856-57. In contrast, a hyperlink "distinguished from the surrounding text in bright blue font" supports conspicuousness. Oberstein v. Live Nation Ent., Inc., 60 F.4th 505, 516 (9th Cir. 2023). A hyperlink's placement is also relevant. Nguyen, 763 F.3d at 1177-78.

As mentioned above, Plaintiff completed two webforms to successfully enroll in CreditWorks. Smith Decl. at ¶ 2. The second webform, attached as Exhibit 2 to Mr. Smith's Declaration, is relevant here because it concluded the enrollment process and it is where the hyperlink to the Terms of Use Agreement can be found.

The top half of Exhibit 2 contains multiple text boxes for

Plaintiff to enter information regarding his identity and account information. Ex. 2 to Smith Decl., ECF No. 32-2 at 9. The next section contains several lines of bolded text in black font, which begins with the following: "By clicking 'Submit Secure Order': I accept and agree to your Terms of Use Agreement . . . ." Id. The text "Terms of Use Agreement" is a hyperlink in blue font, which contrasts with the surrounding text. By pressing the hyperlink, Plaintiff would have been taken to the "Terms of Use Agreement," Smith Decl. ¶¶ 3, 6, which contains an arbitration clause. Terms of Use Agreement, Ex. 3 to Smith Decl., ECF No. 32-2 at 14-15. The section addressing arbitration within the Terms of Use Agreement begins with the following all-caps heading in contrasting font (blue) that is larger than the surrounding text: "DISPUTE RESOLUTION BY BINDING ARBITRATION." See id. Lastly, the bottom section of Exhibit 2 contains a button labeled "Submit Secure Order." By clicking this button, Plaintiff completed the enrollment process and created his CreditWorks account. Smith Decl. ¶¶ 3-5.

　　The hyperlink to the Terms of Use Agreement here is bold, the same size as the surrounding text, and in a contrasting color (blue). See Ex. 2, ECF No. 32-2 at 9. It is also placed before the "Submit Secure Order" button. This formatting is characteristically conspicuous. See, e.g., Capps, 2023 WL 3030990, at *4; Cf. Berman, 30 F.4th at 856-57. The arbitration provision within the Terms of Use Agreement is also conspicuously arranged. See Terms of Use Agreement, Ex. 3 to Smith Decl., ECF No. 32-2 at 14-15. Plaintiff's reliance on nonbinding case law from other circuits is once again unpersuasive; several courts in

this Circuit have found substantially similar website designs provided reasonably conspicuous notice. E.g., Capps, 2023 WL 3030990; Saucedo v. Experian Info. Sols., Inc., No. 1:22-CV-01584-ADA-HBK, 2023 WL 4708015 (E.D. Cal. July 24, 2023); DeVries, 2017 WL 733096; see also Mot. at 7-8 (collecting cases).

In sum, the Court finds that the website design here provided reasonably conspicuous notice of the Terms of Use Agreement given the hyperlink's placement, color, size, and boldness. Plaintiff, therefore, had constructive notice that he would be bound to arbitrate his claims.

      b. Unambiguous Manifestation of Assent

Defendant must next demonstrate Plaintiff unambiguously manifested assent to be bound by the Terms of Use Agreement, which contains an arbitration provision. Berman, 30 F.4th at 856. "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." Id. at 857. Because outward manifestation is the focus of the inquiry, Knutson, 771 F.3d at 565, that Plaintiff did not subjectively assent to arbitration is not dispositive.

Here, the website explicitly advised Plaintiff that if he clicked "Submit Secure Order," he agreed to the Terms of Use Agreement. See Ex. 2, ECF No. 32-2 at 9. This admonition is unambiguous; Plaintiff's "outward manifestations of consent would lead a reasonable person to believe [he] has assented to the [Terms of Use Agreement.]" Knutson, 771 F.3d at 556.

///

C. <u>Conclusion</u>

The Court finds Plaintiff received reasonably conspicuous notice of the Terms of Use Agreement, and he unambiguously manifested his assent to be bound by those terms, including arbitration. Defendant has thus satisfied its burden of demonstrating a valid arbitration agreement exists.

The Court has not considered whether the arbitration provision in the Terms of Use Agreement encompasses Plaintiff's claims for two reasons. First, Plaintiff does not argue his claims fall outside the scope of arbitrability. <u>See generally</u> Opp'n. Second, pursuant to the arbitration provision here, "[a]ll issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision . . . and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision . . . ." Terms of Use Agreement, Ex. 3 to Smith Decl., ECF No. 32-2 at 15. "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." <u>Henry Schein, Inc. v. Archer & White Sales, Inc.</u>, 586 U.S. 63, 65 (2019). "In those circumstances, a court possesses no power to decide the arbitrability issue." <u>Id.</u>; <u>see also</u> <u>Capps</u>, 2023 WL 3030990 at *6 (collecting cases).

### III. ORDER

For the reasons set forth above, the Court GRANTS Defendant EIS' motion to compel arbitration and stays this action as to EIS for the duration of arbitration pursuant to 9 U.S.C. section 3. The parties are directed to file a joint status report within 30

days after a final arbitration order is issued.

    IT IS SO ORDERED.

Dated: July 1, 2024

JOHN A. MENDEZ
SENIOR UNITED STATES DISTRICT JUDGE